_____

No. 96-2764
_____

UNITED STATES OF AMERICA          *
                                  *
          Plaintiff - Appellee    *
                                  *   Appeal from the United States
     v.                           *   District Court for the Western
                                  *   District of Missouri.
TRACY ORLANDO EVANS,              *
                                  *        [UNPUBLISHED]
          Defendant - Appellant   *
                                  *

          Submitted: February 11, 1997

             Filed: March 21, 1997
                  _____

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,* District Judge.
                  _____

PER CURIAM.


     Tracy O. Evans pled guilty to conspiring to produce and use
counterfeit credit cards in violation of 18 U.S.C. § 1029(a)(1).  Pursuant
to Fed. R. Crim. P. 11(a)(2), appellant's plea was conditioned on the right
to appeal the search and seizure issue raised in his Motion to Suppress.
Evans now appeals from the District Court's[1] denial of that motion.  We
affirm.

_____

     *The HONORABLE ANDREW W. BOGUE, United States District
Judge for the District of South Dakota, sitting by
designation.

     [1]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri, Western Division, adopting
the report and recommendation of the Honorable John T. Maughmer,
Chief United States Magistrate Judge.

On June 14, 1995, acting on a tip from the Los Angeles International Airport Task Force, members of the Kansas City Task Force stationed themselves at an arrival gate at the Kansas City airport among a group of individuals awaiting an incoming morning flight from Los Angeles. When the flight arrived, the Kansas City agents observed certain individuals deplaning who matched the description of those suspicious individuals described to them by the Los Angeles authorities. The agents were plain clothed and displayed no weapons. Detective Russell kept surveillance on one of the men (defendant Edwards) while Officer Morgan watched the other man (appellant Tracy Evans) and Agent Hollman watched the woman (defendant Yvette Evans). At the baggage carousel, defendant Edwards retrieved a green duffel bag and began walking toward the exit. Without retrieving any luggage of her own, Mrs. Evans immediately started for the same exit. Mr. Evans exited in a similar fashion very soon thereafter. Once outside the terminal Detective Russell approached Edwards near the street curb to speak with him. Nearly simultaneously, Officer Morgan approached Mr. Evans outside the terminal and Agent Hollman approached Mrs. Evans inside for the same purpose.

As Detective Russell approached Edwards, he identified himself as a police officer and asked if he could speak with Edwards. Edwards consented and Russell asked questions regarding identification, destination, purpose of his travel, and ticket information. Russell also asked if he could search the duffel bag Edwards was carrying. Edwards dropped the bag and pointed to it with both hands, palms up, in a gesture indicating his consent to a search. The bag contained (as later revealed) various personal effects of all three defendants. The bag also contained a small gift-wrapped box and when Russell asked if he could open the box, Edwards replied "Go ahead." Inside the box were several counterfeit credit cards. Russell's encounter with Edwards lasted no more than five minutes.

At the same time that Detective Russell approached Mr. Edwards, Officer Morgan approached Mr. Evans. Morgan identified himself as a police officer and asked to speak with Evans. Evans consented and Morgan asked him questions regarding identification, purpose of his travel, whether he had any luggage, and ticket information. Morgan also asked Evans if he was carrying any illegal narcotics or large amounts of currency to which Evans replied he was not. When Morgan then asked if he could look into Evans' attache case, Evans consented, unlocked the case, and opened it for Morgan. Morgan looked inside and returned it to Evans. Morgan's encounter with Evans lasted no more than five minutes.

Ultimately the agents arrived at the consensus that the three individuals were associated in credit card fraud. Appellant Evans later testified that he borrowed the duffel bag from his sister and that he placed the personal belongings of all three defendants in the bag prior to traveling. He also testified that both he and Edwards wrapped the counterfeit credit cards and that he was aware the cards were in the duffel bag. After Edwards retrieved the duffel bag at the airport, Evans made no attempt to retrieve it from Edwards. Although Evans witnessed the encounter between Russell and Edwards, he did not inform any of the officers that the bag was his, or attempt in any manner to regain possession and control of the bag from Edwards.

Adopting the report and recommendation of the Magistrate Judge, the District Court concluded there was no "seizure" under the Fourth Amendment standard set forth in Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). The Court denied Evans' motion to suppress the credit cards seized from the duffel bag.

On appeal, Evans maintains the District Court erred in finding that no seizure of either Evans or Edwards occurred. Evans first argues that his detainment by officer Morgan amounted to an unlawful seizure and any evidence found on co-defendant Edwards

should be suppressed under the fruits of the poisonous tree doctrine. Alternatively, Evans argues defendant Edwards' detainment by Detective Russell also amounted to an unlawful seizure under Terry and as a result Edwards did not voluntarily consent to the search of the duffel bag. Therefore, Evans maintains, the credit cards were illegally seized and should not be admissible against him. We review the District Court's denial of the motion to suppress for clear error, and the its ultimate conclusion as to whether the Fourth Amendment was violated *de novo*. United States v. Delaney, 52 F.3d 182 (8th Cir.), *cert. denied*, --- U.S. ---, 116 S.Ct. 209, 133 L.Ed.2d 141 (1995).

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall, 100 S.Ct. 1870, 1877 (1980). "No seizure occurs when a police officer simply questions an individual or asks to see his identification, so long as the officer does not send a message that the individual must comply with his request." United States v. McManus, 70 F.3d 990, 992 (8th Cir. 1995)(citing Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991). This Court, however, has refused to draw a bright line between police conduct that constitutes a seizure and police conduct that does not. Instead, "we consider the totality of the circumstances in determining whether 'the police conduct would have communicated to a reasonable person that he was not free to decline the officer's request or otherwise terminate the encounter.'" Id. (citing United States v. Angell, 11 F.3d 806, 809 (8th Cir. 1993), *cert. denied*, --- U.S. ---, 114 S.Ct. 2747, 129 L.Ed.2d 865 (1994).

Under the circumstances of this case, we agree with the Magistrate and the District Court that there is a total absence of evidence indicating the liberty of either Evans or Edwards was restrained in any manner whatsoever through physical force or other display of authority. Both defendants were approached by plain

clothed officers in a calm manner and asked routine questions. The officers displayed no weapons and the encounters, which took place in a large public area, lasted no more than 5 minutes. We also agree that the encounters between the agents and the defendants, as well as the resultant searches, were entirely consensual. Both Evans and Edwards agreed to speak with the officers and both agreed to a search of their baggage. A reasonable person in either defendant's position would believe that he is free to terminate the encounter at any time. Neither defendant was illegally seized under the Fourth Amendment. No reasonable articulable suspicion of criminal activity was necessary on the part of the officers before talking to the defendants, <u>Terry</u>, 392 U.S. at 21; and no warrant was required prior to the consensual search of the duffel bag. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973).

Accordingly, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.